IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-390-D

| | |
|---|---|
| WENDIE LYNN NAPIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Wendie Lynn Napier ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 34, 35). Both parties submitted a memorandum in support of their respective motions (D.E. 34-1, 36). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 37). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I. BACKGROUND

   A. Case History

Plaintiff filed an application for DIB on 21 August 2008 alleging a disability onset date of 31 March 2006. Transcript of Proceedings ("Tr.") 17. Her application was denied initially and again upon reconsideration, and a request for hearing was timely filed. Tr. 17. On 25 March 2010, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 26-48. The ALJ

issued a decision denying plaintiff's claim on 20 May 2010. Tr. 17-25. Plaintiff timely requested review by the Appeals Council and submitted additional medical records (Tr. 610-45) in support of the request. Tr. 13. The Appeals Council admitted the evidence, but denied the request for review on 28 April 2011. Tr. 7-12. In the meantime, plaintiff had submitted an additional medical record (Tr. 646-49). In an order issued on 24 May 2011, the Appeals Council admitted this new evidence, but again denied review. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 26 July 2011, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A person is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (d)(2)(A).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 42 years old on the alleged onset date of disability and 46 years old on the date of the administrative hearing. *See* Tr. 24 ¶ 6; 30. She has a high school education and some college, and prior work as an administrative clerk and secretary. Tr. 23 ¶ 6; 30.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on 31 March 2006. Tr. 19 ¶¶ 1, 2. At step two, the ALJ found that plaintiff has the following medically determinable impairments which are severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): migraine headaches and degenerative disc disease. Tr. 19 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments do not meet or medically equal any of the listings. Tr. 19 ¶ 4.

The ALJ determined that plaintiff has the RFC to perform light work, but requires the option to alternate between sitting and standing every 60 minutes and can perform reaching, handling, or fingering no more than frequently. Tr. 20 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff is capable of performing her past relevant work as an administrative clerk and secretary. Tr. 23 ¶ 6. In making this finding, the ALJ relied on the hearing testimony of a vocational expert ("VE"). Tr. 23-24 ¶ 6; 44-45.

At step five, the ALJ made the alternative finding that there also exists other work in significant numbers in the national economy that plaintiff is capable of doing, including charge account clerk, food checker, and parking lot attendant. Tr. 24 ¶ 6. The ALJ again relied on testimony of the VE in making this determination. Tr. 24 ¶ 6; 45-46. The ALJ concluded that plaintiff has not been under a disability from the alleged onset of disability through the date of the decision, 20 May 2010. Tr. 25 ¶ 7.

## II.   DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g.*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1. More specifically, "[a] court must remand the matter to the Commissioner if a claimant submits additional evidence that is 'new' (i.e., not cumulative or duplicative) and 'material' (i.e., a reasonable possibility exists that the evidence would have produced a different result)." *Hester v. Astrue*, No. 7:07-CV-125-D, 2008 WL 7663940, at *9 (E.D.N.C. 11 Aug. 2008) (citing *Wilkins*, 953 F.2d at 94–96).

**B.     Additional Evidence Submitted to Appeals Council**

The additional evidence submitted by plaintiff in this case is not material because it relates to a period after the date of the ALJ's decision, as the Appeals Council recognized in its orders denying review. Tr. 2, 8; *Basnight v. Astrue*, 2:11CV26D, 2012 WL 3095097, at *5 (E.D.N.C. 29 May 2012) (mag. judge's rep. & recommendation) (holding that evidence before

the Appeals Council was not material because the majority of it post-dated the ALJ's decision and did not relate to the time period before the Commissioner), *aff'd and adopted*, 2012 WL 3095529 (30 July 2012); *Jackson v. Astrue*, No. 1:09CV467, 2011 WL 1883036, at *3 (W.D.N.C. 31 Mar. 2011) (mag. judge's rep. & recommendation) (recognizing that "'[a]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previous non-disabling condition'" (quoting *Beliveau rel. Beliveau v. Apfel*, 154 F. Supp. 2d 89, 95 (D.Mass. 2001)), *aff'd and adopted*, 2011 WL 1883026 (17 May 2011). Specifically, it consists of medical records from August 2010 to February 2011. *See* Tr. 610-49. Plaintiff does not challenge this characterization of the additional evidence by the Appeals Council and does not rely on any of the additional evidence in support of her appeal. Thus, the additional evidence does not require remand. Indeed, while the court will base its analysis on the record as supplemented by the additional evidence, the only material evidence in the record is the portion of it that was before the ALJ.

### C.  Credibility Determination

Plaintiff challenges the ALJ's decision on the sole ground that he erred in his credibility determination. For the reasons set forth below, the court disagrees.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Satisfaction of step one in the analysis does not entitle a claimant's allegations to great weight. *Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *2 (4th Cir. 14 Dec. 2011) ("*Craig*

does not create or recognize a great weight rule affording the claimant a presumption of credibility at step two of the pain analysis based on a successful showing at step one.").

Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig*, 76 F.3d at 595. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)); *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms). Factors to be considered by the ALJ include: (1) daily activities; (2) location, frequency, and intensity of pain and symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment other than medication for relief of symptoms; (6) any other measures used to alleviate the symptoms; and (7) any other factors. 20 C.F.R. § 404.1529(c)(3). As the Fourth Circuit has stated, "[u]nder the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 Fed. 3d at 595 (internal quotations and citations omitted).

Here, plaintiff testified that she stopped working due to severe pain she experienced in her neck and from migraines. Tr. 34, 38. She had three surgeries on her neck—in 2000, 2002, and 2004—which improved her condition enough to enable her to work, but by March of 2006 she was experiencing pain at pre-surgery levels. Tr. 35. She testified to experiencing muscle

spasms, lasting 24 to 48 hours, which cause severe headaches. Tr. 36. Plaintiff described her migraine headaches as starting in the back of her neck and moving to her head. Tr. 36, 38. She also alleges problems in her left arm causing tingling or numbing in her thumb and index finger, and pain and a limited range of motion in her right shoulder. Tr. 36, 37. She has medication that relieves the pain from the migraines in 3 to 4 hours, but reports that side effects of the medication last for 24 to 48 hours and leave her feeling in a haze. Tr. 38. In addition, one medication she is prescribed for migraines, Topomax, causes her severe memory problems, cognitive slowing, and grogginess. Tr. 39. Plaintiff does household chores, but needs to rest in between them. Tr. 40. Her husband helps her with grocery shopping and laundry. Tr. 40-41. Plaintiff claims that there are usually two days per week on which she is unable to complete her daily activities as a result of pain. Tr. 42. The ALJ presented a summary of plaintiff's testimony in his decision. Tr. 20 ¶ 5.

In assessing plaintiff's allegations, the ALJ made the step-one finding that "plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 22 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's testimony was not fully credible. He stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 22 ¶ 5.

The ALJ provided specific reasons for his credibility determination. *See* Tr. 21-23 ¶ 5. His explanation consists primarily of an exposition of specific medical evidence from 2004 to 2010 tending to show that plaintiff's symptoms and their limiting effects are not as severe as she alleges. This exposition follows a comprehensive summary of the medical evidence. Plaintiff's treatment providers during the 2004 to 2010 period included neurologist S. Mitchell Freedman,

M.D. of Raleigh Neurology Associates, P.A., who treated her for both her migraine headaches and disc-related pain (Tr., *e.g.*, 509-14, 535-52, 561-64, 599-609), and physicians at Clayton Medical Associates, who provided plaintiff primary care (Tr., *e.g.*, 365-95, 494-508, 565-71, 580-98). She also submitted to a consultative examination by state agency consulting physician Gonzalo Fernandez, M.D. on 29 March 2007. *See* Tr. 396-400. The data from the records of these providers cited by the ALJ includes signs and laboratory findings of a benign or nonsevere nature; objective evidence of the absence of disabling limitations, including normal ranges of motion in joints and normal mobility; and the effectiveness of medication in controlling symptoms.

The ALJ first addresses medical evidence for the period 2004 to 2007, which focuses on plaintiff's disc-related conditions. He states:

> The above summarized evidence shows an October 2004 cervical spine MRI showed some very minimal residual spurring at C5-6 and the fusion appeared to be fine. By February 7, 2005, she was not taking pain medication and requested to be released to work full time. Two months postoperatively from her left shoulder impingement surgery, she had a full range of motion with very little discomfort. Four months postoperatively, she was back to full function and a review of her systems showed no new pertinent positive findings. A November 17, 2005 follow-up showed the claimant had normal range of motion of the neck, intact sensation, and normal muscle strength in the upper extremities. When Dr. Fernandez consultatively examined the claimant on March 29,2007, he found the claimant was able to walk down the hall with normal gait, get on and off the examination table, was alert and in no apparent distress. She was able to tandem walk, walk on her heels and tiptoes, and walk unassisted. Her motor strength was 5/5 in her right upper and bilateral lower extremities but she had decreased motor strength in the left upper extremity. She had neck flexion to 40 degrees, extension to 25 degrees, and right to left rotation to 70 degrees.

Tr. 22 ¶ 5.

The ALJ then addresses the period from 2008 to 2010, beginning with plaintiff's migraine headaches:

> Concerning her migraine headaches, Dr. Freedman evaluated the claimant on May 19, 2008 and found her neurological examination was normal. Her MRI revealed cerebellar tonsillar ectopia (normal variant) but was otherwise normal. A comparison cervical spine MRI was also taken on June 8, 2005, which was "grossly unchanged as compared to prior exam," and showed a C4-5 posterior disc osteophyte complex that causes only mild to moderate spinal canal stenosis. By August 27, 2008, Dr. Freedman noted the claimant's migraines were overall being effectively treated by medication and she had no signs to suggest a new cervical process that could be underlying the increase in migraines. As of her November 24, 2008 and March 24, 2009 visits with Dr. Freedman, she reported her headaches were well controlled with medication. The claimant reported on March 24, 2009, her neck pain was stable and the pain was at least mild to moderate almost every day; and, on June 23, 2009, she reported both her migraines and neck pain was well controlled on her current medication regimen. On January 6, 2010, Dr. Freedman decided to keep the claimant on her same medication regimen as she was overall doing well. Further, January 13, 2010 notes from Clayton Medical Associates show she had full right shoulder rotation with no pain in the shoulder.

Tr. 23 ¶ 5. The court finds that the evidence cited by the ALJ constitutes substantial evidence supporting his credibility determination.

The other portion of the ALJ's explanation of his credibility determination concerns the opinion of Dr. Fernandez, who found that plaintiff could perform only a limited range of sedentary work. Tr. 400. The ALJ explained that he "assigns some but not significant weight to the opinion of Dr. Fernandez as his opinion was based upon a single evaluation and additional evidence was submitted the doctor could not have considered which shows her symptoms are controlled through medication use." Tr. 23 ¶ 5. The court finds this determination supported by substantial evidence as well.[1]

Plaintiff challenges the ALJ's credibility analysis, in part, on the grounds that the ALJ selectively relied on evidence to support his findings and in doing so ignored the majority of the evidence supporting plaintiff's credibility. But the ALJ repeatedly stated that he considered the

---

[1] The ALJ discussed other medical opinion evidence along with Dr. Fernandez's opinion. But because, as explained below, that evidence holds that plaintiff has fewer limitations than she alleges and the ALJ discounted it, it is not directly relevant to the ALJ's finding that she overstated her limitations. Notably, plaintiff does not directly challenge the weight accorded the medical opinion evidence by the ALJ.

entire record.  *See* Tr., *e.g.*, 17 ("After careful consideration of all the evidence, the undersigned concludes the claimant" is not disabled.); 20 ¶ 5 ("After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC specified]."). With respect to plaintiff's credibility in particular, the ALJ noted at the outset of his determination that he was making it "[a]fter careful consideration of the evidence." Tr. 22 ¶ 5. The ALJ's comprehensive review of plaintiff's testimony and the medical evidence substantiates that he considered the entire record in making his credibility determination.

Plaintiff also contends that the ALJ misinterpreted records showing her migraines as "stable" to mean that they were controlled or cured, rather than just unchanged. However, the ALJ properly relied on the evidence in the record showing that plaintiff's migraines were well-controlled by medication. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *see also Felton-Miller*, No. 11–1500, 2011 WL 6396463, at *2 (4th Cir. 21 Dec. 2011) (holding that court may discredit subjective complaints of pain where substantial evidence supports conclusion that the claimant's symptoms are successfully controlled with medication).

Plaintiff further argues that the ALJ's reliance on a normal head MRI to discredit her testimony about her migraines was in error. *See* Tr. 23 ¶ 5. Laboratory results such as this, however, are required to be considered as part of the credibility analysis, as previously discussed. Moreover, the ALJ did not rely solely on the MRI results. Instead, he clearly considered them in connection with the other pertinent evidence.

Plaintiff also contends that the ALJ could not properly rely on records from early 2005 showing that her neck was doing well after her surgery in October 2004 and that she asked to be released to work because these facts predate her alleged onset of disability in 2006. Again,

though, these records are only a portion of the evidence upon which the ALJ relied. They help provide a longitudinal view of plaintiff's condition, which clearly can help in the evaluation of the reliability of her allegations of pain and other limitations.

Plaintiff argues that the ALJ overlooked the disabling side effects of plaintiff's prescription medications. She relies on several records which document her complaints of feeling groggy as a result of the medication. Tr. 600-01, 604-06, 607-08. To the contrary, however, the ALJ expressly refers to her testimony on this point in his decision (*see* Tr. 20) and manifestly considered it among plaintiff's other allegations regarding her limitations. The ALJ's determination not to treat this particular testimony as fully credible is lawful for the same reasons his credibility determination as a whole is.

It is apparent that the ALJ did give some weight to plaintiff's complaints. He found expressly that plaintiff's migraines and degenerative disc disease are severe impairments and that she is restricted to a limited range of work at the light exertional level, rather than work at a higher exertional level. Tr. 23 ¶ 5. Moreover, he discounted the 23 April 2007 physical RFC assessment of a non-examining consulting physician finding plaintiff capable of medium work on the grounds that it did not give "sufficient consideration to the claimant's impairments and limitations arising there from [*sic*]." Tr. 23 ¶ 5; 435-42. On the same basis, he discounted the one other physical RFC assessment of record, also by a non-examining consulting physician, dated 10 October 2008, which found plaintiff capable of a full range of light work. Tr. 23 ¶ 5; 553-60.

The court concludes that the ALJ's credibility determination is based on the proper legal standards and supported by substantial evidence. Plaintiff's challenge to it is accordingly without merit.

## III.     CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards.  IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections.  Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 15th day of August 2012.

James E. Gates
United States Magistrate Judge